# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMIEN MIKELL, | : | |
| Plaintiff, | : | 1:16-cv-2254 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| HARRY, *et al.*, | : | |
| Defendants. | : | |

## **MEMORANDUM**

## **January 22, 2018**

Plaintiff Damien Mikell ("Mikell" or "Plaintiff"), a state inmate who, at all times relevant, was incarcerated at the State Correctional Institution at Camp Hill, Pennsylvania (SCI-Camp Hill), filed this civil rights action pursuant to 42 U.S.C. § 1983.  Mikell names as Defendants the following individuals:  Superintendent Harry ("Harry"); former Corrections Health Care Administrator Shoop ("Shoop"); Former Safety Manager Fair ("Fair"); Physician's Assistant Barndt ("Barndt"), Deputy Corrections Superintendent for Facilities Management Jane/John Doe; Deputy Corrections Superintendent for Centralized Services Jane/John Doe; Corrections Unit Manager Jane/John Doe; and three Jane/John Doe Corrections Officers.  (Doc. 1, pp. 1, 2,5, 7).

Presently pending is Defendants Harry, Fair and Shoop's motion (Doc. 17) to dismiss Mikell's complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).[1] (Doc. 17). For the reasons set forth below, the motion to dismiss will be granted. As explained *infra*, the Court will also dismiss pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) the complaint against all John/Jane Doe Defendants and Defendant Barndt.[2]

## I. STANDARDS OF REVIEW

### A. Rule 12(b)(6)

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as

---

[1] Defendants move to dismiss Plaintiff's "Amended Complaint." However, as noted by Mikell (Doc. 23, p. 2), the matter is proceeding on the original complaint; there has been no amended complaint filed.

[2] The Court relies on Section 1915 as these Defendants have not been served. By way of background, on May 2, 2017, an Order issued directing Mikell to provide to the Court additional information concerning the identities and addresses to achieve service on these Defendants. (Doc. 17, ¶¶ 1, 2). He was cautioned that the failure to comply with the Order would result in the dismissal of these Defendants pursuant to Federal Rule of Civil Procedure 4(m) as the ninety-day time period allotted for service had long since passed. (*Id.* at 3). In response, Mikell filed a copy of a Request to Staff Member, dated May 7, 2017, and directed to the Superintendent's Assistant, seeking additional information concerning Barndt and the Jane/John Doe Defendants. (Doc. 22-1, pp. 2, 3). The Court liberally construed this document as a discovery request and, on November 2, 2017, directed Defendants to respond to the request within twenty days. (Doc. 24). Counsel has presumably complied with the Court Order to the satisfaction of Mikell as there has been no indication to the contrary. However, to date, Mikell has failed to provide the Court with additional information. This case has been pending since November 7, 2016, without service on the John/Jane Doe Defendants or Defendant Barndt. However, in light of Mikell's *pro se* status, the Court has opted to consider whether he has stated a claim against these Defendants, as opposed to dismissing them pursuant to Rule 4(m).

2

true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 334 F. App'x 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008)). A district court ruling on a motion to dismiss may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice*.*" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

> Under the pleading regime established by [*Bell Atl. Corp. v.*] *Twombly*, 550 U.S. 544 (2007) and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787–88 (3d Cir.2016) (internal citations, quotations and footnote omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). At the second step, the Court identifies those allegations that, being merely conclusory, are not entitled to the presumption of truth. *Twombly* and *Iqbal* distinguish between legal conclusions, which are discounted in the analysis, and allegations of historical fact, which are assumed to be true even if "unrealistic or nonsensical," "chimerical," or "extravagantly fanciful." *Iqbal*, 556 U.S. at 681. Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B. Section 1915(e)(2)(B)(ii)

Section 1915(e)(2)(B)(ii), which pertains to *in forma pauperis* proceedings states, in pertinent part, "the court shall dismiss the case at any time if the court determines that…the action or appeal…fails to state a claim on which relief may be granted." 28 U.S.C. §1915(e)(2)(B)(ii). The applicable standard of review for is the same as the standard for a motion pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, which provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.

## II. ALLEGATIONS OF THE COMPLAINT

Mikell alleges that on October 24, 2014, he was transferred from the State Correctional Institution at Greene (SCI-Greene) to SCI-Camp Hill to appear in court. (Doc. 1, p. 2). He was assigned to E-Block, D-Pod, Cell 21, Bed 2. (*Id.*) Over the course of the next few days, he conveyed to various corrections officer, identified only as Jane/John Does, that the bunkbed within his cell was not equipped with a step ladder or guardrails. (*Id.* at p. 9, ¶¶ 3-7).

On October 28, 2014, Mikell "rolled over and fell out of the bunkbed he was sleeping in onto the floor landing directly on his arm, back and head." (*Id.* at 8). Shortly thereafter, he received medical attention for his injuries from a corrections officer and medical staff member. (*Id.* at 9). He alleges that he experienced "excruciating pain" and that the aforementioned medical staff member documented severe bruising and swelling in the area of his arm, back and head, but did not prescribe him pain medication. (*Id.* at 10). Instead, the medical care provider advised him that he would be placed on the sick call list for the following day. (*Id.*) Within an hour, he was assigned to a cell that contained a single bed. (*Id.* at 11). Later that day, Physician's Assistant Barndt "purportedly" attempted to examine Mikell but was unsuccessful as Mikell was "purportedly" in the recreational yard. (*Id.* at 12).

5

On October 30, 2014, prison staff informed Mikell that he was scheduled for transport back to SCI-Greene. (*Id.* at 13). Mikell "immediately" conveyed to a corrections officer identified as Jane/John Doe Corrections officer, that he sustained injuries when he fell out of his bunk and had not been provided pain medication. (*Id.* at 14). The Corrections officer responded that, despite his injuries, he was to be transferred back to SCI-Greene. (*Id.* at 15).

Mikell alleges that Defendants Harry, Fair, and various Jane/John Doe Facility managers "failed to ensure bunkbeds were equipped with a stepladder and guardrails." (*Id.* at 16). He also alleges that Defendants Shoop and Barndt "failed to ensure plaintiff was provided with adequate medical attention with respect to the aforementioned injuries he sustained as a result of him having fell out of bunkbed." (*Id.* at 11).

He seeks injunctive relief in the form requiring all double bunkbeds within SCI Camp Hill to be equipped with a stepladder and guardrails. (*Id.* at p. 3, ¶ 1). He also requests compensatory and punitive damages. (*Id.* at ¶ 2).

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, § 1983 limits liability to persons who violate constitutional rights.

1. <u>Statute of Limitations</u>

Defendants first seek to dismiss the complaint as barred by the statute of limitations. They argue that because the statute of limitations defect is clear on the face of the complaint, *i.e.*, the cause of action accrued on October 28, 2014, and the complaint is file stamped November 7, 2016, it is appropriate to address the issue on a motion to dismiss. (Doc. 18, p. 5, n.2, citing *Jones v. Bock*, 549 U.S. 199, 215 (2007).

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of

action has not been brought within the statute of limitations." *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). A claim brought pursuant to 42 U.S.C. § 1983 is subject to the same statute of limitations that applies to personal injury tort claims in the state in which such a claim arises. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009). Mikell's claim arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations for personal injury actions. 42 PA. CONS. STAT. ANN. § 5524(2). The statute of limitations period accrues when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. *See Garvin v. City of Phila.*, 354 F.3d 215 (3d Cir. 2003); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991).

It is undisputed that the statute of limitations period accrued on October 28, 2014, the date Mikell fell out of the bunkbed. (Doc. 18, p. 5; Doc. 23, p. 2). Defendants argue that because he did not file his complaint until November 7, 2016, his claims are barred by the statute of limitations. (Doc. 18, p. 5). Mikell disagrees. He represents that "on October 27, 2016, while confined within the Pennsylvania State Correctional Institution (SCI)-Forest, [he] placed into the possession of prison authorities a pro se document titled Complaint to be mailed

via pre-paid first-class postage on the aforementioned date of October 27, 2016, i.e., one (1) day short of the two year statute of limitation expiration date, plaintiff's pro se complaint should be considered timely filed pursuant to the prisoner mailbox rule." (Doc. 23, p. 2). Review of the complaint confirms that Mikell executed the complaint on October 27, 2016. (Doc. 1, p. 3).

Under the prison mailbox rule, a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Pabon v. Superintendent S.C.I. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011). In establishing this rule, the Supreme Court recognized the unique challenge prisoners confront in that they cannot personally deliver their documents to the courthouse for filing, nor can they control when their documents are approved to be sent through the mail. *Houston*, 487 U.S. at 271. "The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox-he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers

the notice to prison authorities for mailing is a bright-line rule, not an uncertain one." *Id.* at 275.

Based on the date of execution of the complaint, October 27, 2016, and Mikell's representation that he delivered the complaint to prison authorities on that date, we are compelled to find that the statute is met.

    2.    <u>Failure to State a Claim</u>

        *a.*    *Eighth Amendment Conditions of Cell Claim*

Mikell alleges that Defendants Harry, Fair, and various Jane/John Doe Facility managers and Corrections officers violated his Eighth Amendment rights when they ignored his concerns and "failed to ensure bunkbeds [contained within his cell] were equipped with a stepladder and guardrails." (Doc. 1, ¶¶ 4-7, 16). The Eighth Amendment protects prison inmates from cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Rather, a condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life.

*See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

An Eighth Amendment claim brought against a prison official must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

Mikell's allegations fail to satisfy the requirement that the conditions in his cell were "sufficiently serious" to violate the Eighth Amendment. *Hudson*, 503 U.S. at 8. Sleeping in a bunk bed without guardrails does not violate contemporary standards of decency, and thus, does not constitute cruel and unusual punishment under the Eighth Amendment. *See Green v. Fisher*, No. 12-0982, 2015 WL 6473780, at *12 (M.D.Pa. Nov. 19, 2014); *Brown v. Pastrana*, 446 F. App'x 270, 272 (11th Cir. 2011). Only "extreme deprivations" that deny the minimal civilized measure of life's necessities are grave enough to violate the Eighth Amendment. *Hudson*, 503 U.S. at 8–9.

The allegations are also insufficient to establish deliberate indifference. Courts have held that the absence of a safety mechanism on the top bunk in a prison cell, or the lack of a bunk bed ladder, at most suggests negligence and does not give rise to a constitutional claim as it does not rise to the level of deliberate indifference. *See Brown v. Chester County Prison,* No. 16-3097, 2016 WL 3511545, at *2 (E.D.Pa. June 27, 2016) (collecting the following cases: "*See, e.g., Tutora v. Sweeney*, No. CIV.A. 14-4458, 2014 WL 7059086, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials."); *Williams v. Corizon*, Civ. A. No. 12-2412, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013) ("To the extent that Plaintiff attempts to argue that Defendant City of Philadelphia is liable because they did not have ladders for all the bunk beds, such argument fails, since that is, at most, negligence, which does not demonstrate the requisite culpability for liability to attach."); *Walker v. Walsh*, Civ. A. No. 11-1750, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) ("[F]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury." (internal quotation marks omitted)); *Pumphrey v. Smith*, Civ. A. No. 09-233, 2010 WL 4983675, at *4 (W.D.

Pa. Dec. 2, 2010) ("The lack of a bunk ladder in a prison cell does not meet the stringent requirements of deliberate indifference."); *see also Franco-Calzada v. United States*, 375 F. App'x. 217, 218-19 (3d Cir. 2010) (per curiam) (dismissing appeal as frivolous when plaintiff's constitutional claims rested on allegations that he fell from a faulty ladder attached to his top bunk, which defendants knew or should have known to be unsafe because at least two other inmates had fallen)").

Based on the foregoing, Defendants' motion to dismiss Mikell's Eighth Amendment claim related to the absence of a guard rail and ladder on his bunkbed will be granted and the complaint against the Jane/John Doe Defendants will be dismissed pursuant to 28 U.S.C. § 1912(e)(2)(B)(ii).

        *b.*      *Eighth Amendment Medical Care Claim*

Mikell alleges that Health Care Administrator Shoop and Physician's Assistant Barndt "failed to ensure [he] was provided with adequate medical attention with respect to the aforementioned injuries he sustained as a result of him having fell out of bunkbed." (Doc. 1, p.11, ¶ 17). For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate

13

indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). A "failure to provide adequate care ... [that] was deliberate, and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an error in medical judgment" is not. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

Mikell seeks to impose liability on Shoop based on her supervisory role as the Health Care Administrator. "[T]here are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). With regard to the second theory, a plaintiff must show that each the defendant personally participated in the alleged constitutional violation or approved of it. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (finding that in a § 1983 suit, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). Liability "cannot be predicated solely on the operation of *respondeat superior*." *Id. See also Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). Personal involvement can be shown through proof of personal direction or actual knowledge and acquiescence. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Acquiescence requires

both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

Mikell's threadbare allegation that Shoop failed to ensure that he received adequate medical attention is a wholly conclusory legal allegation that fails to point to, or rely on, any policy, practice or custom and is devoid of facts that Shoop affirmatively denied him adequate medical care through personal direction, or based on actual knowledge or acquiescence. This conclusory allegation is insufficient to survive Shoop's motion to dismiss.

In turning to the allegations against Defendant Barndt, Mikell alleges that a medical care provider examined him immediately after the fall and informed him that he would be "placed on the medical list to be evaluated the following day." (Doc. 1, ¶ 10). Later that same day, Defendant Barndt, a Physician's Assistant,

"purportedly attempted to examine plaintiff via, sick call, but failed to do so due to plaintiff purportedly being in the recreational yard." (Doc. 1, p. 10, ¶ 12). From this Mikell concludes that Barndt failed to ensure that he was provided with adequate medical attention. (*Id.* at p. 11, ¶ 17). This allegation is a legal conclusion not entitled to the assumption of truth. As concerns his allegation concerning Barndt's attempt to examine him, Mikell's use of the word "purportedly" indicates that he simply does not believe that Barndt attempted to follow-up on his condition. This singular allegation is insufficient to show deliberate indifference as it does not plausibly give rise to an entitlement to relief. There is no indication that Barndt knew of a need for medical treatment but intentionally refused to provide it, delayed necessary medical treatment based on a nonmedical reason, or prevented him from receiving needed or recommended treatment. At most, Barndt's alleged failure to examine Mikell on a follow-up sick call appointment constitutes negligence. As noted *supra*, conduct that constitutes malpractice or negligence does not rise to the level of deliberate indifference.

For the reasons set forth above, Defendant Shoop's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted and the complaint against Barndt will be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

## IV. LEAVE TO AMEND

"The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle*, 429 U.S. at106). "[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher–Harlee Corp. v. Pote Concrete Contractors., Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment is futile "if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (stating that "[i]n assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).").

Affording Mikell the opportunity to amend the Eighth Amendment conditions claim concerning bunkbed safety would be futile. Amendment will not cure the deficiencies contained in the original complaint and cannot transform the negligence claim into one of constitutional magnitude. It would also be futile to allow Mikell to amend the Eighth Amendment inadequate medical care claim

18

against Shoop and Barndt. Even if Mikell sufficiently alleged personal involvement on the part of Shoop, there is no underlying constitutional misconduct alleged. The underlying claim is, at most, one of negligence against Defendant Barndt.

V.      **CONCLUSION**

Defendants Harry, Fair and Shoop's motion (Doc. 17) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted and the complaint against the John/Jane Doe Defendants and Defendant Barndt will be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

An appropriate Order will issue.